IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RENITA ANN HALL )
 )
   v. ) NO. 3:04-0524
 )
BOB KENSTRICK, et al. )

TO: Honorable Robert L. Echols, District Judge

# REPORT AND RECOMMENDATION

By order entered June 25, 2004 (Docket Entry No. 4), this action was referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Rule 72 of the Federal Rules of Civil Procedure, for consideration of all pretrial matters.

Presently pending before the Court is Defendants' motion for summary judgment (Docket Entry No. 49). Plaintiff has responded in opposition to the motion (Docket Entry Nos. 60-65 and 67), and Defendants have filed a reply (Docket Entry No. 66). For the reasons set out below, the Court recommends that the motion be granted and this action be dismissed.

## I. BACKGROUND

Plaintiff filed her complaint pro se on June 16, 2004, against the YMCA of Middle Tennessee ("YMCA") and three YMCA employees -- Bob Kenstrick, YMCA Director; Christi Harris, Plaintiff's immediate supervisor; and Elizabeth Frederick.[1] She asserts that she was formerly

---

[1] Plaintiff also listed a "Jane Doe" defendant in the caption of her complaint. However, this defendant has never been identified by Plaintiff or served with process and is not a party to the action.

employed at the Maryland Farms branch of the YMCA and was terminated from her employment on June 14, 2002. The plaintiff, who is black, alleges that her termination was racially motivated. Plaintiff filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter from the EEOC dated October 28, 2002. See Attachments to Complaint (Docket Entry No. 1).

Plaintiff began working at the YMCA in August 2001, as a part-time housekeeper. Plaintiff worked on the weekends and, at the time of her termination, Plaintiff's work schedule was on Fridays, Saturdays, and Sundays. During her employment, Plaintiff was counseled by Defendant Harris about unacceptable workplace behavior involving bringing her children to work and wearing a cellphone headset while working. On both occasions, Plaintiff contends that she acknowledged the matter and agreed to discontinue this behavior.

On June 7, 2002, Plaintiff was involved in an incident with a YMCA member and her juvenile daughter while Plaintiff was working as a locker room attendant. Plaintiff informed the woman and her daughter that the daughter was not allowed to be in the adult women's locker room because of YMCA rules. Although Plaintiff states that she was very calm during the incident and acted appropriately, she admits that the woman became very upset about the situation and subsequently cancelled her YMCA membership. Defendant Harris later learned about the matter and called Plaintiff requesting that she come to the YMCA at 6:00 a.m. one day during the following week for a meeting about the incident. Plaintiff chose not to attend the meeting because it was not on one of her scheduled work days. When Plaintiff arrived at the YMCA on Friday, June 14, 2002, she was informed by Defendant Harris that she had been terminated.

Defendant Harris filled out several forms regarding Plaintiff's termination:

2

(1) a Separation Notice in which Harris listed the following as the circumstances of the separation, "I was always 'TALKING' to Renita about some infraction - indicated on other sheet." See Exhibit A to Docket Entry No. 52 at 0004;

(2) a Termination Form in which Harris listed four reasons for the termination -- the incident in the locker room involving the YMCA member, Plaintiff's children coming to work with her, Plaintiff wearing a cell phone headset, and "couple of times she left us hanging and didn't show up for work w/no word." See Exhibit A to Docket Entry No. 52 at 0007-0008;

(3) an Employee Counseling Report noting "lost prospective member and volenter (sic) worker for summer (35 hrs. wk) the way Renita handled under-age person in locker room," See Exhibit A to Docket Entry No. 52 at 0005; and

(4) an Employee Counseling Report noting "Past Situation" and "I have spoke to Renita about her kids in people's offices - about no telephones - member's complaints about loud and harsh talking." See Exhibit A to Docket Entry No. 52 at 0006.

By order entered January 6, 2005 (Docket Entry No. 27), Plaintiff's claims for violations of 42 U.S.C. §§ 1985, 1986, and 1988, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. were dismissed from the action upon Defendants' motion to dismiss. The only claim remaining in the action is Plaintiff's claim brought under 42 U.S.C. § 1981.

Defendants have answered the complaint (Docket Entry No. 21), and pretrial activity has occurred pursuant to a scheduling order entered January 27, 2005 (Docket Entry No. 29). Other than Defendants' motion for summary judgment, there are no motions pending before the Court.

Defendants assert that summary judgment is appropriate because Plaintiff has not set forth evidence that her termination was on account of her race. Defendants contend that Plaintiff was terminated from her employment because of incidents of unacceptable workplace behavior and that Plaintiff has not supported her case with anything other than conclusory allegations and speculation. Defendants support their motion with a statement of undisputed material facts (Docket Entry No. 54), Plaintiff's deposition testimony (Docket Entry No. 51 at Exhibit A), the affidavit of Frankie

3

Allen (Docket Entry No. 52), and Plaintiff's responses to Defendants' first set of discovery requests (Docket Entry No. 53).

Plaintiff responds with four of her own affidavits (Docket Entry Nos. 60, 61, 62, and 64) and with two responses in opposition to Defendants' statement of undisputed facts (Docket Entry Nos. 63 and 67). While Plaintiff admits some of the facts relied upon by Defendants in their motion, she disputes that the incident with the YMCA member justified her termination since she was merely enforcing what was an actual YMCA rule. Plaintiff also contends that a YMCA supervisor who was white was not fired from her position despite showing up drunk at work and thus she was subjected to racially unequal treatment.

## II. SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issues of material fact exist and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979). In considering a motion for summary judgment, the court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue,

4

might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id., at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

### III. LEGAL CONCLUSIONS

After review of the evidence before the Court, the Court finds that no reasonable jury could find in favor of Plaintiff on her Section 1981 claim because there is not sufficient evidence to support this claim. In the face of a properly supported summary judgment motion, Plaintiff must present specific evidence showing that a genuine issue of material fact exists and that she could succeed on the merits of her claim based on the evidence presented. Liberty Lobby, Inc., 477 U.S. at 252; Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Plaintiff has not set forth such evidence, and she is not entitled to trial solely on the basis of her unsupported allegations and speculation. Gregg v. Allen-Bradley Co., 801 F.2d 859, 861 (6th Cir. 1986).

Section 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

42 U.S.C. § 1981(a). The statute defines the term "make and enforce contracts" as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

In the instant action, Plaintiff was a part-time employee at the YMCA. As stated in the YMCA of Middle Tennessee Handbook, Plaintiff's employment at the YMCA was as an "at will" employee, and the YMCA could terminate her at any time and for any reason, with or without cause. See Exhibit A to Docket Entry No. 52 at 0019. Thus, as long as the evidence does not show or infer racial discrimination on the part of Defendants, whether or not Plaintiff was treated fairly or unfairly is not a matter of the Court's concern. Being treated unfairly, by itself, is simply not a violation of Section 1981.

Plaintiff has no direct evidence of racial discrimination. There is no evidence showing that her race was considered in the decision to terminate her. There is no evidence that any of the Defendants called her racial epithets or slurs or in any other manner demeaned her because of her race.

In order to support a claim under 42 U.S.C. § 1981 in the absence of direct evidence, Plaintiff must produce evidence sufficient to make out a prima facie case of discrimination under the burden shifting evidentiary test set out in St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981); and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for claims brought under Title VII. Additionally, for a Section 1981 claim, Plaintiff must produce evidence that the discrimination was intentional. Bell v. Ohio State Univ., 351 F.3d 240, 252-53 (6th Cir. 2003).

Once Plaintiff establishes a <u>prima facie</u> case, the burden of production then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the termination. <u>See</u> <u>McDonnell</u>, 411 U.S. at 802. Plaintiff must then prove that the reason set forth by Defendants was a pretext for discrimination. <u>Id</u>.; <u>Burdine</u>, 450 U.S. at 254-55. Although the burden of production falls on Defendants at the second step of the process, the ultimate burden of persuasion always remains on Plaintiff to show that she was the victim of intentional discrimination. <u>Burdine</u>, 450 U.S. at 256.

In the instant action, Defendants do not argue that a <u>prima facie</u> has not been established. Instead, Defendants assert that they have articulated a legitimate, nondiscriminatory reason for Plaintiff's termination and that there is no evidence that this reason was a pretext for discrimination. Defendants contend the following facts which were articulated as the basis for Plaintiff's termination are undisputed: (1) Plaintiff had a confrontation with a YMCA member which resulted in the member becoming very upset and withdrawing her membership; (2) Plaintiff brought her children with her to work which resulted in a warning from Defendant Harris; and (3) Plaintiff wore a cellphone headset while performing her job which resulted in a warning from Defendant Harris. Defendants argue that, while Plaintiff may view these incidents as minor, the YMCA was well within its rights as an employer to make the decision to terminate Plaintiff's employment based on these incidents.

The Court agrees with Defendants. The workplace incidents articulated by Defendants as the reason for Plaintiff's termination were not made-up or concocted by Defendants. Indeed, Plaintiff admits that they occurred. <u>See</u> Plaintiff's Deposition, Exhibit A to Docket Entry No. 51 at 28-30. Further, while Plaintiff believes that the incident with the YMCA member in the locker room was blown out of proportion, she acknowledges that it could justify a termination of employment

7

if viewed in a different manner than her own. Id. at 58, 62-64, and 71-72. Plaintiff has not presented any evidence that Defendants engaged in a vendetta against her or that there was a systematic effort to create a reason to terminate her employment. Other than the termination and how the locker room incident was handled, Plaintiff can point to nothing about her employment or her supervisors at the YMCA which was objectionable. Id. at 27-28.

None of the affidavits or responses in opposition submitted by Plaintiff sufficiently rebut Defendants' supporting evidence and warrant the denial of summary judgment. Three of the affidavits (Docket Entry Nos. 60, 61, and 64) concern only the issue of problems Plaintiff encountered obtaining a copy of the motion for summary judgment and are not even germane to the merits of the case. The remaining affidavit (Docket Entry No. 62) and responses in opposition (Docket Entry Nos. 62, 63, and 67) all set out at length Plaintiff's disagreement with what occurred but fail to offer any evidence supporting a claim of racial discrimination.

Plaintiff does suggest that a white employee was not similarly disciplined when the employee showed up "drunk" at work. See Docket Entry No. 62 at 4. The Court notes that the incident referenced by Plaintiff occurred approximately two years subsequent to Plaintiff's termination. See Defendants' Interrogatory Response No. 8, Docket Entry No. 63 at 21. Further, the facts alleged in support of this assertion do not show that Plaintiff and the other employee were similarly situated in any respect in terms of their employment or regarding the seriousness of the incidents involved. The lack of such evidence renders Plaintiff's argument insufficient to raise a genuine issue of material fact regarding pretext. See Caldwell v. Russell, 181 F.3d 730-31 (6th Cir. 1999).

8

Plaintiff's only support for her claim is her own subjective belief that she was discriminated against.[2] Such support fails to provide evidence raising a genuine issue of material fact concerning her ultimate burden of showing intentional discrimination. See Bell, 351 F.3d at 253; Manzer v. Diamond Shamrock Chemical Co., 29 F.3d 1078, 1082-84 (6th Cir. 1994). There is simply no evidence before the Court supporting a claim that Plaintiff was terminated because she is black. Given the lack of any supporting evidence in her favor, no reasonable jury could find that a discriminatory reason was more likely than not the motivation for her termination or that the proffered explanation is unworthy of belief. See Burdine, 450 U.S. at 256.

## R E C O M M E N D A T I O N

For the reasons set out above, the Court respectfully RECOMMENDS that Defendants' motion for summary judgment (Docket Entry No. 49) be GRANTED and this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the

---

[2] The Court notes that Plaintiff's belief that race was involved appears to have been, at least in some part, encouraged or initiated by other people with whom she had shared the facts about her situation. See Plaintiff's Deposition, Exhibit A to Docket Entry No. 51 at 66-67 and 80.

right to appeal the District Court's Order regarding the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                      Respectfully submitted,

                                      JULIET  GRIFFIN
                                      United States Magistrate Judge